UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KIMBERLY JEFFERY-WOLFERT**

    **Plaintiff,**

v.

**UC HEALTH,**

    **Defendant.**

**CASE NO.: 1:16cv656**

**Judge Michael R. Barrett**

## OPINION AND ORDER

This matter is before the Court on Defendant UC Health's Motion for Summary Judgment (Doc. 20) and the responsive memoranda thereto; and Plaintiff's Motion for Leave to File Second Amended Complaint with Demand for Jury Trial (Doc. 19) and the responsive memoranda thereto. The Court also amends, in part, its previous Opinion and Order granting in part Defendant's Motion to Dismiss (Doc. 15).

### I. BACKGROUND/PROCEDURAL POSTURE

Plaintiff was an Infection Preventionist for UC Health beginning in March 2013. (Doc. 26-1 at ¶ 3). She transferred to UC Health's main campus in April 2014. (Id. at ¶ 4). Plaintiff's job description included the oversight of issues relating to infection outbreak investigations. (Id. at ¶ 6). In May 2015, Plaintiff was tasked with beginning a comprehensive investigation of hospital acquired *Stenotropomonas* cases. (Id. at ¶ 9). Plaintiff had specific concerns about the bronchoscopy cleaning process. (Id. at ¶ 14). As the investigation went on, Plaintiff grew concerned about steps being taken to protect patients from exposure as new cases of *Stenotropomonas* continued to trend upward. (Id. at ¶ 34). She voiced her concerns to her

1

director, Dr. Sopirala, both orally and in writing, on September 24, 2015. (Id. at ¶ 40). According to Plaintiff, she was told to continue working and to "please take care of it." (Id. at ¶ 41). She and Dr. Sopirala also had other disagreements related to the investigation process. (Id. at ¶ 42; Doc. 20-2 at ¶ 6).

Plaintiff met with an employee assistance counselor, Erika Taylor, to discuss "the ongoing outbreak and need for additional help." (Doc. 26-2 at ¶ 44-45). According to Plaintiff, Ms. Taylor recommended she contact the hospital safety hotline and arrange a meeting with human resources. (Id. at ¶ 45). Around the same time, Dr. Sopirala removed Plaintiff from her role as investigator of the infection outbreak. (Id. at ¶ 65; Doc. 20-2 at ¶ 6). Plaintiff was apparently removed from several other projects as well. (Doc. 26-1 at ¶ 68).

Despite this, Plaintiff was still concerned about the way in which the investigation was being handled. (Id. at ¶ 63). As a result, Plaintiff met with the nursing director, Jen Jackson, to discuss her concerns. (Id.). From Plaintiff's perspective, the atmosphere at the hospital had become so unbearable that on November 13, 2015, she submitted her two week notice of resignation. (Id. at ¶ 70).

Before leaving, Plaintiff attempted to meet with UC Health personnel one more time in order emphasize the seriousness of the infection outbreak. (Id. at ¶ 90). She requested that an ad hoc ethics committee be convened within her two-week notice period. (Id at ¶ 71-72). That afternoon, Plaintiff was told to turn over her badge and keys and was asked to leave the premises. (Id. at ¶ 74).

Plaintiff initially brought the following claims: 1) retaliation; 2) hostile work environment; 3) whistle blower violation pursuant to § 4113; 4) intentional infliction of emotional distress ("IIED"); and 5) punitive damages. UC Health moved to dismiss all of

Plaintiff's claims. The Court granted in part UC Health's motion, leaving only Plaintiff's IIED claim.

## II.     AMENDED ORDER GRANTING IN PART MOTION TO DISMISS (DOC. 15)

On February 14, 2017, the undersigned granted in part Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 15). Although the result does not change, this Court's analysis as it relates to Plaintiff's retaliation claim was partially flawed. Accordingly, the Opinion and Order (Doc. 15) is amended as follows.

> As the undersigned previously explained:
>
> Plaintiff brings claims for retaliation under Title VII, 42 U.S.C. 2000e *et seq.*, 42 U.S.C. § 1981 and the Ohio Civil Rights Act, Ohio Revised Code § 4112.01, *et seq.* Claims brought under Title VII and Ohio's anti-discrimination statute are evaluated under the same standard. *Thompson v. UHHS Richmond Heights Hosp., Inc.,* 372 Fed.Appx. 620, 623 (6th Cir.2010). To establish a prima facie case of retaliation, Plaintiff must show: (1) she engaged in protected activity, (2) Defendant was aware of the protected activity, (3) Defendant subsequently took an employment action adverse to Plaintiff, and (4) a causal connection exists between the protected activity and the adverse employment actions. *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir.2003) (citing *Strouss v. Michigan Dep't of Corr.,* 250 F.3d 336, 342 (6th Cir.2001); *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000)).
>
> Plaintiff alleges the protected activity in which she was engaged was her job. The Court disagrees.
>
> 42 U.S.C.§ 2000e-2(a) in relevant part makes it unlawful for an employer to:
>
>> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
>
> 42 U.S.C. § 2000e-2(a)(1).

(Doc. 15, PageID 109-10).

This Court's analysis, in part, however, addressed Plaintiff's membership in a protected class. Because Plaintiff's claim was not one for discrimination, such an analysis was incorrect.

3

Rather, a retaliation claim requires a protected activity in opposition to a violation of, or participation in a proceeding under Title VII, Section 1981 or Ohio Revised Code § 4112. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454-55 (2008). Plaintiff alleged she was retaliated against because she recommended reporting the infection outbreak to the FDA and local health department. Plaintiff does not allege the retaliation she faced was the result of opposition to race, color, religion, sex, or national origin discrimination. Nor was the alleged retaliation the result of participation in a proceeding under Title VII, Section 1981 or Ohio Revised Code § 4112. Accordingly, Plaintiff's retaliation claim still fails as a matter of law. The Court's previous Opinion and Order (Doc. 15) is amended only to reflect the Court's revised analysis as provided herein.

### III. MOTION FOR SUMMARY JUDGMENT

#### a. Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). These standards upon which the court evaluates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

b. **Analysis**

        i. **Immunity**

UC Health first contends it is entitled to immunity for its actions pursuant to an Ohio law often referred to as the Health Care Quality Improvement Act. Ohio Rev. Code § 2305.251(A). The law provides immunity for certain conduct performed by peer review committees. Ohio Rev. Code § 2305.251(A). Specifically, the law provides in relevant part as follows:

> No health care entity shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of a peer review committee of the health care entity. No individual who is a member of or works for or on behalf of a peer review committee of a health care entity shall be liable in damages to any person for any acts, omissions, decisions, or other conduct within the scope of the functions of the peer review committee.

*Id.* "Peer review committee" is defined as a committee that "[c]onducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care…" Ohio Rev. Code § 2305.25(E)(1)(a).

It is undisputed that the allegations against UC Health relate to actions taken by the infection control committee at UC Health. (Doc. 20-2, PageID 249 at ¶ 4). Dr. Sopirala was the head of the infection control committee and Plaintiff was a member of the committee. (Id. at ¶ 4-5). The investigation, which related to issues with bronchoscopes and *Stenotrophomonas* was undertaken by the infection control committee. (Id.). Thus, UC Health's actions arguably fall within the umbrella of the law.

Such laws, however, were not designed to shield a hospital from liability for conduct that endangers the public; rather, their purpose is to improve the quality of medical care. More specifically, the Federal Health Care Quality Improvement Act and similar state laws protect the public from potentially incompetent physicians by allowing peer review committees to

5

communicate openly without fear of later being sued by a physician for retaliation. *See* 42 U.S.C.A § 11101. Accordingly, allowing UC Health to claim immunity from liability for alleged intentional infliction of emotional distress would create a dangerous precedent for which the law was not intended to protect. UC Health is therefore not entitled to immunity under Ohio law.

### ii. Intentional Infliction of Emotional Distress

In order to prevail on an IIED claim, Plaintiff must prove: (1) Defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) Defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) Defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) Plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008).

"[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Day v. National Elec. Contractors Ass'n*, 82 F.Supp.3d 704, 709 (S.D. Ohio 2014) (quoting *Baab v. AMR Servs. Corp.*, 811 F.Supp. 1246, 1269 (N.D. Ohio Jan. 6, 1993)) (citations omitted). To be liable, Defendant's behavior must go beyond intentionally tortious or even criminal behavior. *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666, 671 (1983).

Plaintiff's response raises potentially serious allegations. (*See* Doc. 26, PageID 296-97). For example, Plaintiff quotes UC Health allegedly stating "it doesn't matter that these clients are going to die." (Id. at PageID 296). She also asserts that employees were ordered to back date the required handling forms or they would be fired. (Id. at PageID 297). Plaintiff, however,

cites no evidence in the record to support such serious allegations. The Court's review of the record likewise revealed no supporting evidence. Plaintiff's argument is therefore unpersuasive.

Even if UC Health's conduct were deemed "extreme and outrageous" Plaintiff has not suffered the serious emotional distress required to prevail on an IIED claim. When evaluating IIED claims, Ohio courts place great emphasis on the "seriousness" of the emotional distress. *Yeager*, at 6 Ohio St. 3d at 375. "Serious emotional distress may be found where a reasonable person would be unable to cope adequately with the mental distress engendered by the circumstances of the incident." *Watkins v. Millennium School*, 290 F.Supp.2d 890, 903 (S.D. Ohio 2003) (citing *Miller v. Currie,* 50 F.3d 373, 378 (6th Cir.1995)). Serious emotional distress may not be found, however, where the plaintiff fails to show she sought medical or psychiatric help or, at least then, she must show that she was unable to function in daily life. *Id.* (citing *Miller v. City of Columbus,* 920 F.Supp. 807, 824 (S.D.Ohio 1996)).

First, Plaintiff testified she suffers from occasional insomnia. (Doc. 20-1, PageID 195, 212). However, she has never sought treatment for her condition. For relief, she sometimes takes over-the-counter Benadryl. (Id. at PageID 195). Plaintiff also testified she suffers from the occasional loss of appetite, occasional upset stomach, and occasional diarrhea. (Id.) Similarly, she has never sought treatment for any of these conditions nor does she take medication to treat them. (Id.) Although she said these occurrences are disruptive, she acknowledged her symptoms do not disrupt her daily life, including caring for her three children. (Id.)

Plaintiff cites *Kurtz v. Harcourt Brace Jovanovich, Inc.*, 69 Ohio App.3d 267 (8th Dist. 1990) in an effort to distinguish the facts of her case. There, as Plaintiff explains, the court granted summary judgment, finding that stress, bodily strain, and fear were insufficient to establish an IIED claim. Plaintiff argues that unlike the plaintiff in *Kurtz*, who did not seek

professional help, she did. While this is technically true, Plaintiff concedes she never sought help from a medical care provider. (Doc. 20-1, PageID 212). Indeed, she averred that a health care provider could not have fixed her problems. (Id.) Instead, Plaintiff met with an employee assistance professional, Erika Taylor, on one occasion to discuss her workplace issues. (Id. at PageID 211). Ms. Taylor did not recommend she seek additional medical treatment. (Id. at PageID 212).

In addition, Plaintiff's visit with Ms. Taylor did not focus on her own medical issues. Instead, Plaintiff met with Ms. Taylor "to seek guidance with this patient safety issue and the ethical dilemma" she was facing. (Doc. 26-1, PageID 306 at ¶ 44). She "expressed [her] concerns about the ongoing investigation and need for additional help and followed Ms. Taylor's recommendations to contact the hospital safety hotline for UCMC, as well as arranging a meeting with human resources because of concerns for retaliation by Dr. Sopirala or other superiors." (Id. at ¶ 45). Plaintiff's testimony regarding her workplace issues are concerning. However, as the undersigned has already explained in this case, "'difficult work conditions,' including. . . lack of management support, are not sufficient, even if combined with a potentially discriminatory dismissal, to rise to the level of extreme and outrageous conduct to support a claim for intentional infliction of emotional distress under Ohio law." *Crespo v. Cellco Partnership*, No. 1:16-cv-679, 2016 WL 4194136, *3 (Aug. 9, 2016) (citing *Nicklas v. United Parcel Service, Inc.*, No. 1:07CV73, 2007 WL 4322220 (N.D.Ohio Dec. 7, 2007)).

To the extent Plaintiff argues her negative performance evaluations and subsequent resignation, and her inability to get another job constitute emotional distress, Plaintiff is incorrect. Although loss of employment can be severe, a reasonable person should be expected

to endure such distress. *Day*, 83 F.Supp.3d at 710 (quoting *Mathur v. Meriam Process Techs.*, No. 1:10-CV-00121, 2010 WL 3211875, at *3).

In sum, Plaintiff has not presented evidence of the kind of serious emotional distress necessary to establish an IIED claim. Plaintiff's insomnia, diarrhea, and upset stomach are not serious or severe enough that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress generated by the circumstances of the case." *Godfredson v. Hess Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (quoting *Reynolds v. Wingers, Inc.,* 86 Ohio App.3d 742, 621 N.E.2d 1239, 1243 (1993)). UC Health is entitled to summary judgment on Plaintiff's IIED claim.

## IV. MOTION FOR LEAVE TO AMEND

Plaintiff argues that she cannot adequately support her IIED claim without notes from her meeting with Ms. Taylor. After her resignation, Plaintiff requested a copy of Ms. Taylor's notes from their session. According to Plaintiff, Ms. Taylor advised her that Plaintiff's records could not be located and that she did not know what happened to the records. Consequently, Plaintiff seeks leave to amend to add a spoliation claim related to the disappearance of Ms. Taylor's records.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Trial courts need not give leave to amend when doing so would be futile. *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "An amendment is futile if it would not survive a motion to dismiss" under Rule 12(b)(2) or 12(b)(6) of the Federal Rules of Civil Procedure. *SFS Check, LLC*, 774 F.3d at 355 (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

9

Because Plaintiff's amendment would be futile, Plaintiff's motion is denied. "A spoliation claim under Ohio law has five elements: (1) pending or probable litigation, (2) the defendant's knowledge of such litigation, (3) the defendant's willful destruction of relevant evidence, (4) actual disruption of a claimant's litigation due to the destruction, and (5) damages flowing from the spoliation." *Newberry v. Silverman*, 789 F.3d 636, 647 (6th Cir. 2015) (citing *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993)).

Plaintiff alleges, in conclusory fashion, that "UC Health willfully destroyed the counseling records…" (Doc. 19-3, PageID 178 at ¶150). Plaintiff essentially appears to argue that because the records are missing, UC Health willfully destroyed the records. The Sixth Circuit has rejected a similar argument, affirming the dismissal of a spoliation claim based upon the absence of records. *Newberry*, 789 F.3d at 647 (quoting *McLeod v. Mt. Sinai Med. Ctr.,* 166 Ohio App.3d 647, 852 N.E.2d 1235, 1245 (2006)). Moreover, Plaintiff cannot show that the absence of the records disrupted Plaintiff's IIED claim. Plaintiff has already testified as to what Ms. Taylor told her during their session. Importantly, regardless of the notes taken by Ms. Taylor, Plaintiff's IIED claim would still fail. Indeed, it is Plaintiff's own testimony that dooms her claim. As explained above, Plaintiff's occasional insomnia, diarrhea, and upset stomach are not serious or severe enough to establish infliction of emotional distress; no notes taken by Ms. Taylor would change this fact. Accordingly, Plaintiff's spoliation claim would not survive a motion to dismiss and such an amendment would therefore be futile.

### V. CONCLUSION

Consistent with the foregoing, the Court's previous Opinion and Order (Doc. 15) is **AMENDED** as clarified herein. UC Health's Motion for Summary Judgment (Doc. 20) is **GRANTED**. Plaintiff's Motion for Leave to File Second Amended Complaint with Demand for

Jury Trial (Doc. 19) is **DENIED**.  The Clerk shall enter judgment accordingly.  This matter shall be **TERMINATED** from the Court's docket.

    **IT IS SO ORDERED.**

                                             _s/*Michael R. Barrett*_
                                               Michael R. Barrett, Judge
                                               United States District Court